## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3028 | **DATE** | 1/25/2001 |
| **CASE TITLE** | THELMA L. HARRIS, et al. vs. DOROTHY L. SIMS REGISTRY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiffs' motion for summary judgment [24-1] is granted. Defendant Dorothy L. Sims Registry's motion for summary judgment is denied. Status hearing set on February 8, 2001 at 9:00 a.m. to set the case for trial on all remaining issues. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 29 2001 date docketed | 46 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | mw docketing deputy initials | |
| | Copy to judge/magistrate judge. | DOCKETING JAN 26 PM 5:23 | 1/25/2001 date mailed notice | |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | jad mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THELMA L. HARRIS, et al. )
)
Plaintiffs, ) No. 00 C 3028
)
v. ) Suzanne B. Conlon, Judge
)
DOROTHY L. SIMS REGISTRY, )
)
Defendant. )

**DOCKETED**

**JAN 2 9 2001**

### MEMORANDUM OPINION AND ORDER

Plaintiff Thelma L. Harris, et al.[1] (collectively "plaintiffs") sue Dorothy L. Sims Registry ("Sims") for failure to pay the minimum wage (Count I) and failure to pay overtime compensation (Count II), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* Plaintiffs and Sims filed cross motions for summary judgment on the question of whether plaintiffs fall under the FLSA's companionship exemption, pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1.[2] Plaintiffs contend the FMLA's coverage applies to their job as homemakers. Sims asserts the plaintiffs are exempt from coverage.

---

[1]The following individuals are also plaintiffs: Shirley Abrams, Vera Aziz, Rosa Ball, Edna Bell, Nadine Brown, Patricia Brown, Clara Bullock, Maxine Casey, Brenda Chapman, Samella Clay, Evelyn Clemons, Rosie Cotton, Doris Cox, Angelette Curry, Velma Flowers, Portia Garcia, Felicia R. Givens, Verna Glenn, Lisa Griffin, Shantay Harden, Evelyn Howard, Lula Jones, Ollie Jones, Larry Kerby, Evelyn Lopez, Annie McClinton, Alice McDonald, LaToya McKinney, Roberta Meadows, Betty Morgan, Lula Odom, Mary Penson, Loretta Rayburn, Roberta Skinner, Louise Smith, Montessa Smith, Diana Sterling, Latasha Swanson, Leona Tipton, Delores Walker, LaSheryl Watkins, Theresa Watt, Belinda M. West, Cecilia Williams, and Jerrietta Williams. Pursuant to stipulation, Dorothy Williamson was dismissed from this action.

[2]On October 12, 2000, this court bifurcated this proceeding and ordered the parties to limit discovery to the exemption issue. This court further ordered discovery to be limited to ten sample plaintiffs.

46

## BACKGROUND

Sims is an employer under the FLSA. Pursuant to two contracts with the Department of Aging, Sims provides the State of Illinois with homemakers services[3] for elderly individuals in their homes. These contracts were entered into under the Community Care Program,[4] which was established pursuant to the Illinois Act on Aging.

The plaintiffs are or were employed by Sims as homemakers. Under the terms of their employment agreement, Sims instructed the plaintiffs to go to clients' homes and work a set number of hours for the clients. Sims listed the plaintiffs' responsibilities regarding each client in care plans. Each care plan stated that the homemaker must perform housework. In addition to housework, most of the care plans required the homemaker to prepare meals, wash laundry, and run errands for clients.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource*

---

[3]State regulations define "homemaker services" as: "1) Teaching/performing of meal planning and preparation; routine housekeeping skills/tasks (e.g., making and changing beds, dusting, washing dishes, vacuuming, cleaning and waxing floors, keeping the kitchen and bathroom clean and laundering the client's linens and clothing); shopping skills/tasks; and home maintenance and repairs. 2) Performing/assisting with essential shopping/errands may include handling the client's money (proper accounting to the client of money handled and provision of receipts are required)... Homemaker service may include transportation to medical facilities or for essential errands/shopping or for essential business with or on behalf of the client as specified in the plan of care." 89 Ill. Amin. Code § 240.210(a), (b).

[4]The Community Care Program also offers "adult day services" and "senior companion services." Sims is not formally a provider of either service.

*Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. The FLSA and the Companionship Services Exemption

In 1974, Congress amended the FLSA so that the Act's minimum wage and overtime requirements would cover employees performing domestic services in private homes.[5] However, Congress included an exemption for:

> Any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of their age and infirmity) are unable to care for themselves. 29 U.S.C. § 215(a)(13) ("§ 215").

Section 215 of the FLSA explicitly grants the Department of Labor ("DOL") authority to define the terms of the statute in the DOL's regulations. The meaning of "companionship services" is a critical issue in this case. If homemakers do not provide "companionship services," the exemption does not apply to them. The DOL defines "companionship services" as:

> Those services which provide fellowship, care, and protection for a person who because of advanced age or physical or mental infirmity, cannot care for his or her own needs.

---

[5]Domestic service workers are employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, family chauffeurs, and similar jobs. Senate Report No. 93-690, 93d Cong., 2d Sess. (1974).

3

> Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: provided however, that such work is incidental, *i.e.,* does not exceed 20% of the total weekly hours worked. 29 C.F.R. § 552.6 ("§ 552.6").

This definition of "companionship services" would exempt homemakers from FMLA coverage if 20% or less of their weekly hours were consumed by general housework.

The parties dispute whether this definition of "companionship services" is too broad. "The FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers." *Klein v. Rush-Presbyterian St. Luke's Medical Center,* 990 F.2d 279, 282 (7th Cir. 1993). *See also Holly Farms Corp. v. NLRB,* 517 U.S. 392, 399 (1996) ("reviewing courts must take care to assure that exemptions from ... coverage are not so expansively interpreted as to deny protection to workers the Act was designed to reach"). The employer bears the burden of proving the exemption applies. *Alex v. Chicago,* 29 F.3d 1235, 1243 (7th Cir. 1994).

## III. Chevron analysis

Courts usually must defer to an agency's interpretation of a statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844 (1984). However, courts may not follow agency regulations that are inconsistent with congressional intent. *Id* at 845. Sims asserts Congress intended homemakers to be exempt from FMLA coverage and the DOL's definition of "companionship services" is consistent with congressional intent. Plaintiffs disagree and contend the DOL's definition expands the scope of exemption beyond congressional intent. Specifically, plaintiffs contend the DOL's definition improperly includes an unlimited amount of ordinary domestic services, thereby exempting domestic service for the elderly or infirm even if no supervision or fellowship is provided.

4

In considering congressional intent, *Chevron* deference requires a court to first examine the text of the statute. *Commodity Trend Service, Inc. v. Commodity Futures Trading Commission,* 233 F.3d 981, 988 (7th Cir. 2000). If the text clearly supports or opposes the regulation, the court must either uphold or invalidate the regulation. *Rubin v. U.S.,* 449 U.S. 424, 430 (1981). If the statute is either ambiguous or silent on the issue, the court considers the reasonableness of the regulation. *Commodity Trend Service, Inc.,* 233 F.3d at 991; *Bankers Life and Casualty Co. v. U.S.,* 142 F.3d 973, 983 (7th Cir. 1998). The court will give deference to the agency's interpretation of the statute if the interpretation is reasonable. *Id.*

### A. Ambiguity of the statute

Both parties assert § 215's text is not ambiguous, but their interpretations of "companionship services" are different. Plaintiffs contend the core meaning of "companionship services" is being with a person, and therefore refers to employees hired primarily to act as a companion for the elderly. Plaintiffs assert that employees who are hired primarily to perform household chores and personal services for the elderly and who only incidentally provide companionship in the process do not fall under the companionship exemption. Sims contends the term "companionship services" means "being with someone to help them with their extreme needs," and therefore homemakers are companions.

Beginning with the statutory language, the plain meaning of § 215's text is not sufficiently clear for this court to determine whether the statute supports or contradicts DOL's regulation. As the parties' plausible yet differing interpretations demonstrate, the term "companionship services" creates ambiguity in regard to the extent employees can provide household and personal services to elderly individuals without being considered companions.

## B. Reasonableness of the regulation

In the second step under *Chevron*, this court must determine whether the DOL's regulation "harmonizes with the language, origins, and purpose of the statute." *Bankers Life and Casualty Co.*, 142 F.3d at 983. Consideration of congressional intent and legislative history is proper during this stage of analysis. *Id.* If the regulation appears unreasonable after considering all relevant factors, this court must invalidate the regulation. "Although we sometimes describe *Chevron* as a rubber stamp, we know that agencies occasionally act unreasonably... [W]e believe that courts can rein in the excesses of unreasonable administrative rulemaking." *Id.* After thorough consideration of the FMLA's legislative history, Congress' purpose in enacting the FMLA, and the DOL's recent proposed amendments to its regulations, this court finds § 552.6 is unreasonably broad.

Plaintiffs offer portions of the FMLA's legislative history to demonstrate the unreasonableness of DOL's definition of "companionship services."[6] Isolated remarks of individual legislators can be considered when determining the reasonableness of an implementing regulation. *See Alex v. City of Chicago*, 29 F.3d 1235, 1239 (7th Cir. 1994) (consideration of isolated remarks of legislators is appropriate when the meaning of the statute's text is not clear).

The legislative history suggests Congress did not consider homemakers to be companions.[7] In fact, history shows Congress considered "companionship services" to be equivalent to babysitting

---

[6]Sims offers arguments as to why plaintiffs fall under the DOL's definition of companionship services but fails to address why the definition is reasonably consistent with congressional intent.

[7]Other jurisdictions have found Congress did not intend to include homemakers in the companionship exemption. When considering workers who provide various daily services to their clients, including cleaning, cooking and hygiene, the Ninth Circuit wrote, "These services are obviously not what Congress intended to include in the concept of ... companionship." *McCune v. Oregon Senior Services Div.*, 894 F.2d 1107, 1113 (9th Cir. 1990).

in terms of job responsibilities. For example, during floor debate in the Senate, the Chair of the Senate Labor Subcommittee, Harrison A. Williams Jr. elaborated on the meaning of § 215's babysitter and companion references:

> We use the situation in which people are in a household not to do household work but are there, first, as babysitters. I think we all have the full meaning in mind of what a babysitter is there for–to watch the youngsters. "Companion," as we mean it, is in the same role–to be there to watch an older person, in a sense. [1 Legislative History of the Fair Labor Standards Amendments of 1974 (1976) (Senate floor debate July 19, 1973)].

After this explanation, another senator interjected, "In other words, an elder sitter" and Senator Williams replied, "Exactly." *Id.* It is clear the senators did not intend to exempt employees whose primary job responsibilities went beyond fellowship and protection. Additional clarification of the senators' intentions is found in the Senate Report, which states:

> It is not, however, the Committee's intent to include within the term 'domestic service' such activities as casual babysitting and acting as a companion. On the other hand, the fact that a person employed as a cook, maid, housekeeper, etc. may also have duties relating to the care of children does not remove that person from the category of a domestic service employee." Sen. Report No. 93-690, p. 20.

This reasoning also undoubtedly applied to duties relating to the care of elderly individuals.

The DOL has recognized that Congress did not intend to include homemakers in the companionship exemption: "The legislative history states that the 1974 Amendments were intended to include all employees whose vocation was domestic service, but to exempt from coverage babysitters and companions who were not regular bread-winners or responsible for their families' support." *Federal Register*, Vol. 66, No. 13 (January 19, 2001) (citing 119 Cong. Rec. 24773, 24801 (1973)). It is undisputed that many of the plaintiffs work to support their families rather than to simply earn additional spending money. Congress' desire to protect bread-winners would apply to them.

The stated purpose of the FMLA provides further evidence the DOL's definition of "companionship services" is unreasonable. For example, the House of Representatives Committee on Education and Labor stated its expectation "that extending minimum wage and overtime protection to domestic workers will not only raise the wages of these workers but will improve the sorry image of household employment... Including domestic workers under the protection of this Act should help to raise the status and dignity of this work." House Report No. 93–913, 93d Cong., 2d Sess., (1974), pp. 33-34. Similarly, the Senate Report on the 1974 Amendments noted private household work was one of the least attractive fields of employment because of low salaries, irregular hours, and few benefits. Senate Report No. 93–690, p. 18. If Congress had considered the job of homemakers, each of these same concerns would have undoubtedly applied to them.

The evidence most damaging to Sims' contention that Congress intended to exempt homemakers from coverage is the DOL's recent proposal to amend the regulations pertaining to the companionship exemption. In the amendment proposal dated January 19, 2001, the DOL states:

> Due to significant changes in the home care industry over the last 25 years, workers who today provide in-home care to individuals needing assistance with activities of daily living are performing types of duties and working in situations that were not envisioned when the companionship services regulations were promulgated. The number of workers providing these services has also greatly increased, and most of these workers are being excluded from the FLSA under the companionship services exemption. *The Department has reevaluated the regulations and determined that–as currently written–they exempt types of employees far beyond those whom Congress intended to exempt when it enacted section 13(a)(15). Therefore, the Department proposes to amend the regulations to revise the definition of "companionship services,"* which sets out the duties that a companion must be employed to perform in order to qualify for the exemption, *to more closely mirror Congressional intent* (emphasis added). *See Federal Register*, Vol. 66, No. 13 (January 19, 2001).

The DOL goes on to discuss congressional intent. The DOL writes:

It clearly was Congress' intent under the 1974 FLSA Amendments to cover all workers who performed domestic services as a *vocation*, excluding casual babysitters and providers of companionship services who were *not* regular bread winners or responsible for their families' support... Personal and home care aides perform a variety of tasks in the home, including household work and assistance with nutrition and cleanliness. Employers have generally treated workers employed as home health aides and personal and home care aides as exempt companions, based upon the Department's current regulations... As a result, the Department believes it is necessary to amend the regulations to focus them on fellowship and protection duties that Congress originally intended the companion exemption to cover. *Id.*

It is obvious from the proposed amendments that the DOL agrees the current definition of "companionship services" under § 552.6 is unreasonable. This alone is sufficient reason to disregard the current version of § 552.6. "An agency's revised interpretation deserves deference because ... the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis... An agency ... must be given ample latitude to adapt [its] rules and policies to the demands of changing circumstances." *Rust v. Sullivan*, 500 U.S. 173, 186 (1991) (citations omitted). Accordingly, § 552.6, as currently drafted, is invalid to the extent it exempts homemakers from FMLA coverage. Plaintiffs do not fall under § 215's companionship exemption.[8]

---

[8]The arguments regarding whether Congress intended to exempt companions employed by agencies in addition to companions employed by private individuals are moot. It should be noted, however, the DOL also proposes amending its regulations so the companionship exemption would not apply if the employee was hired by "someone other than a member of the family in whose home he or she works." The DOL's reasons for proposing this amendment are the same as those discussed above for amending its definition of "companionship services." See *Federal Register*, Vol. 66, No. 13 (January 19, 2001).

The arguments regarding whether plaintiffs primarily perform general housework or assist those needing help with daily living chores are moot because neither job falls under Congress' intended meaning for "companionship services."

Sims' request for a ruling, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, on whether the FLSA's minimum wage requirement is based on hourly wages or the total weekly wage is denied. This court's October 12, 2000 order stated that the companionship exemption issue shall be presented to this court before any other issues.

9

## CONCLUSION

Plaintiffs' motion for summary judgment is granted. Sims' motion for summary judgment is denied. Plaintiffs are not exempt from coverage under the FLSA.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

January 25, 2001