# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3028 | **DATE** | 1/24/2002 |
| **CASE TITLE** | Thelma L. Harris et al. vs. Dorothy L. Sims Registry | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiffs' petition for an award of attorney's fees [74-1] is granted in part and denied in part. The total amount of attorneys' fees awarded to the plaintiffs is adjusted to $86,658.75. Adding in the agreed expenses of $4,629.50, defendant owes plaintiffs a total of $91,288.25. This case is dismissed with prejudice by agreement reached on 5/8/01. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | JAN 25 2002 date docketed | 83 |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 1/24/2002 | |
| | | | 02 JAN 24 PM 2:35 | date mailed notice | |
| KF | courtroom deputy's initials | | | KF7 | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THELMA L. HARRIS, et al., )
)
Plaintiffs, )
) No. 00 C 3028
v. )
)
DOROTHY L. SIMS REGISTRY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

DOCKETE[D]
JAN 2 5 200[ ]

Michael T. Mason, United States Magistrate Judge:

The parties to this Fair Labor Standards Act ("FLSA") action reached a settlement after the District Court granted partial summary judgment in favor of the plaintiffs. As the prevailing party in an FLSA action, plaintiffs seek the payment of their attorney's fees and costs from defendants in the amount of $94,737.25. 29 U.S.C. § 216(b). Defendants object to the methodology plaintiffs used to calculate their attorney's fees and contend that the correct amount is actually $29,433.50.

## Background

The plaintiffs in this case were a class of employees who worked for defendant as "home companions" to elderly or indigent individuals who needed daily assistance in order to be able to live independently. The union of which the plaintiffs were members – The Service Employees International Union ("SEIU") – brought suit against defendant pursuant to 29 U.S.C. § 216(b), contending that defendant violated the FLSA by failing to pay the plaintiffs overtime and by exceeding that statute's maximum hours requirements. The main issue in the case was whether the plaintiffs held a class of

jobs which were exempt from the requirements of the FLSA; several Department of Labor ("DOL") interpretive regulations indicated that this was the case. See 29 C.F.R. §§ 552.6, 552.109(a).

The parties agreed to bifurcate the exemption question from the issue of damages. After the parties fully briefed the exemption issue in a motion for summary judgment, but before the District Court ruled, the DOL issued a proposed rulemaking that essentially reversed its previous position on the exemption of employees such as the plaintiffs, holding that they were subject to the protections of the FLSA. The plaintiffs immediately informed the Court of the DOL's statement, and the Court granted partial summary judgment in favor of the plaintiffs.[1]

**The Fee Issue**

Defendant argues that the plaintiffs' calculation of attorneys' fees is excessive. There are three parts of the calculation with which defendant disagrees. Defendant contends: 1) that SEIU's in-house counsel should not be able to use the market rate of comparable law-firm attorneys to set their billing rates but must use a lower cost basis rate; 2) the billing rates for several law-firm attorneys who also worked for plaintiffs are too high; and 3) plaintiffs' total number of hours spent working on the case should be reduced. We will address each of these contentions in turn.

<u>Billing Rate for SEIU In-House Counsel</u>

Defendant contends that in setting the billing rate for attorneys Becker and Howard – who work as in-house counsel for the union – we should take a pro-rata

---

[1] Defendants do not contest that the DOL statement effectively decided the exemption issue in favor of the plaintiffs.

2

share of their regular salaries and add a small additional amount to account for overhead costs. This "cost basis" method has been roundly rejected by both the Seventh Circuit and Supreme Court, and we decline to adopt it. *See Blum v. Stetson*, 465 U.S. 886 (1984). In *Blum*, the Court considered how to assign attorney fees to lawyers who did not have a customary billing rate, such as attorneys for legal aid organizations or in-house counsel. The Court concluded that the correct way to set a rate is to determine the market rate such an attorney might command if he or she sold his or her legal skills for a profit, such as by working at a law firm.

Defendant asks that we distinguish this case from *Blum* and its progeny because Becker's job does not normally entail litigating on behalf of plaintiffs or on behalf of his employer, the way a legal aid attorney's or in-house counsel's position does. Further, defendants argue that SEIU actually brought this lawsuit to further its own collective bargaining interests – and not out of a true desire to help the plaintiff class – making the justification for market-rate fees less strong.

We find that both of these arguments lack merit. For the purposes of setting fees, there is little or no difference between in-house counsel for a corporation and in-house counsel for a union, and the cases do not make any distinction. Indeed, the Seventh Circuit has recognized case law in which a legal services fund within a union – like the one established by the SEIU – may recover fees at a market rate. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 115 (7th Cir. 1996). It does not matter whether the union is suing on behalf of its pension fund or for the benefit of its members, and we find it speculative of defendant to argue that SEIU only had its own collective bargaining interests at heart when it

3

brought suit. In any event, we have found no reason to depart from the rule of *Blum* in this case, and thus, we will set Becker's and Howard's hourly rates according to the market.

The next question of course is what is an appropriate market rate for each of these lawyers? In setting a billing rate, the court may look at affidavits submitted by the plaintiffs which set forth the hourly rates of attorneys with comparable experience. *See Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). After reviewing the submissions by the plaintiffs, we are satisfied that Becker, the lead counsel for the plaintiffs, should be compensated at a rate equal to the billing rate of Robert Brown, lead counsel for defendants. This rate was $265/hour from April through July, 2000, $285/hour in August, 2000, and $300/hour thereafter. Both lawyers have extensive FLSA experience and comparable education and legal backgrounds, and such a fee is consistent with affidavit testimony submitted by the plaintiffs. Although plaintiffs request that we compensate Becker at $300/hour for all of his work on the case since April, 2000 as an alternative to ordering pre-judgment interest, we decline to do so. Plaintiffs recognize that the correct billing rate can be set by looking at what it would cost to go out and buy comparable services in the market. In this case, we are satisfied that Brown's billing rate as it changed throughout the course of litigation is an appropriate means of setting Becker's rate.

Additionally, we find that a rate of $125/hour is appropriate for Howard, an attorney with one year experience. The affidavits submitted by the plaintiffs all concur that the rate is proper and the defendants, after objecting to the market rate methodology in general, do not suggest another rate for Howard. *See Uphoff v.*

4

*Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999) (once a fee applicant has met its burden by submitting affidavits of comparable rates, the burden shifts to defendant to demonstrate why a lower rate is more appropriate).

Billing Rates of Other Plaintiffs' Attorneys

The defendants object to the claimed billing rates for three of plaintiffs' outside counsel. The three attorneys worked for two different law firms (the "Law Firms"), both of which perform a substantial part of their work for unions and other labor-side clients. Plaintiffs set the rates for each attorney at a rate equal to or slightly less than that charged by defendant's attorneys with comparable experience.

Generally, a "lawyer's regular rate is strongly presumed to be the market rate for his or her services." *Central Cartage Co.*, 76 F.3d at 116-117. In this case, plaintiffs argue that the Law Firms bill their union, fund, and individual employee clients at less than the market rate because of their dedication to the labor cause, but that they should be reimbursed at the same rate as defendant paid its comparable lawyers. Plaintiffs also distinguish between the type of work the Law Firms performed in this case (FLSA litigation) and the type of work for which they charge their labor clients the lower rates. They submit affidavits stating that their requested rates – which range between $225 and $265 for the three lawyers in question – are reasonable for FLSA litigation.

In this case, there is uncontradicted evidence that the Law Firms regularly charge all of their labor clients between $125/hour and $200/hour, depending on the experience of the attorney and the type of client.[2] In *Moriarty v. Svec*, 223 F.3d 955,

---

[2] In the instant case, all of the work performed by the Law Firms, except the 5.5
(continued...)

5

965 (7ᵗʰ Cir. 2000), the Court found that the fees actually charged by the victorious law firm were the appropriate fees to award the plaintiff, even though the law firm argued that it charged so-called "below market" rates to its (nearly all labor-side) clients.

Plaintiffs argue that *Blum* requires us to set the Law Firm rates at an amount "representing the cost the victorious litigant would have incurred to buy legal services in the market." *Central Cartrage Co.*, 76 F.3d at 116. If this case involved an ERISA collection action or a union collective-bargaining situation, we would be comfortable setting the attorneys' fees at the actual rates they charge their labor clients for these types of work, since those rates represent the cost of buying the lawyers' services. However, this is an FLSA action, and we have only partial evidence that the Law Firms also perform FLSA work at lower rates, since only one attorney – Swanson – actually received an hourly fee ($125/hour). Contrasting this evidence of reduced fees are cases in which various District Courts in Chicago have actually set fees in FLSA actions; some courts have set the respective fees for lead and junior attorneys at rates closer to those requested by the plaintiffs. Given the differing information, we are going to set each attorney's rate at the high end of the hourly rates they charge their labor clients. Thus, we will set attorney Bloch's rate at $200/hour, Swanson's rate at $160/hour, and Rowen's rate also at $160/hour.[3]

Number of Hours Billed

---

[2](...continued)
hours performed by Swanson, was on a contingency basis.

[3] The only rate we have for Rowen is $145/hour. However, since he has similar experience to Swanson, we will set the same rate for both of them.

6

Finally, defendants contend that of the 49.5 hours of research and other work performed by junior plaintiffs' attorneys Howard and Swanson, 34.5 hours were unnecessary. They argue that given lead attorney Becker's professed expertise in the area of FLSA liability law, and the fact that he had recently tried and won a nearly identical case in the Ninth Circuit, the time spent researching several of the issues in this matter was excessive. While we agree with the plaintiffs that it would be negligent of an attorney to fail to update his or her research for every new case, no matter how similar it may be to a previous matter, we do find that a reduction in the total hours billed is appropriate. Ms. Howard spent the majority of her time researching three fairly straightforward areas of the law[4] that most likely arose in Becker's earlier litigation on the companionship exemption in the Ninth Circuit. For example, the seven hours she spent compiling every case that discusses the exemption issue is somewhat excessive, given Becker's successful litigation of that issue immediately prior to this lawsuit. We cannot imagine that he had not compiled all exemption-related case law for that suit, so updating the research should have been a simple task. Similarly, research on whether interpretive regulations are binding on the Court also should have been available and only required updating . We will thus reduce Ms. Howard's billed hours by twelve to account for duplicative work.

For the reasons stated above, we will adjust the amount of attorneys' fees

---

[4] Howard spent fourteen hours researching whether interpretive regulations were binding on the court, seven hours searching for cases on the FLSA companionship exemption, seven hours researching the joining of the owner and CEO of defendant company to the complaint and ten hours drafting the motion to amend, which motion defendant did not contest on the merits.

7

requested by the plaintiffs as follows: 1) Becker - $79,742.50 (32.5 hours at $265.00, 3 hours at $285.00, 234.25 hours at $300.00); 2) Howard - $4,000.00 (32 hours at $125.00); 3) Bloch - $1,040.00 (5.2 hours at $200.00); 4) Rowen - $240.00 (1.5 hours at $160.00); 5) Swanson - $880.00 (5.5 hours at $160.00); and 6) Krolikowski (no dispute) - $756.25 (6.05 hours at $125.00). Thus, the total amount of attorneys' fees awarded to the plaintiffs is $86,658.75. Adding in the agreed expenses of $4,629.50, defendant owes plaintiffs a total of $91,288.25. It is so ordered.

Michael T. Mason
United States Magistrate Judge

Date: January 24, 2002